IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF | : | CIVIL ACTION |
| ELECTRICAL WORKERS LOCAL UNION | : | |
| NO. 654 HEALTH AND WELFARE FUND, | : | |
| ET AL, | : | |
| | : | |
| v. | : | |
| | : | |
| INDUSTRIAL VALLEY CONTROLS, INC. | : | |
| d/b/a IVC, INC. | : | NO. 09-5840 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE[1]

Plaintiffs International Brotherhood of Electrical Workers Local Union No. 654

Health and Welfare Fund ("Local 654"), et al. (collectively "Plaintiffs"), brought suit

against Defendant Industrial Valley Controls, Inc. ("IVC" or "Defendant"), alleging IVC

was a party to a collective bargaining agreement ("CBA") with Local 654 from 1997 to

the present, and asking the court to compel IVC to submit to an audit of its accounting

and employment records.[2]  Presently before the court is Plaintiffs' motion for summary

judgment (Doc. 10) and Defendant's response (Doc. 11).  For the reasons that follow, I

will grant the motion in part and order Defendant to submit within thirty days of this

---

[1]This case was originally assigned to the Honorable William H. Yohn, who referred the matter to me for all proceedings upon the consent of the parties.  See Doc. 7.

[2]Plaintiffs also seek payment of any amount found due and owing after the audit, as well as costs, fees and any damages provided by the applicable collective bargaining agreement(s) and/or the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA").  See Doc. 1 at ¶11.

Memorandum and Order to an audit by an auditor appointed by Plaintiffs. Final judgment

will not be entered at this time, however. Instead, I will give the parties the opportunity

to review the audit and provide submissions regarding the amounts owing, if any.

I.      **FACTS AND PROCEDURAL HISTORY**

   A.      **Formation of the Collective Bargaining Relationship and Relevant
            Sections of the Agreement and Declaration of Trust**

Except where stated, the following facts are not in dispute. In 1997, IVC and its

President, Brian Reskos, signed a one-page "Letter of Assent" authorizing the Penn-Del-

Jersey Chapter of the National Electrical Contractors Association ("NECA") to be its

collective bargaining representative with Local 645. See Letter of Assent, attached to

Doc. 10 at Exh. "B." The Letter of Assent stated in relevant part that it "shall remain in

effect until terminated by the undersigned employer giving written notice to the Penn-

Del-Jersey Chapter of NECA and to the Local Union at least one hundred fifty (150) days

prior to the then current anniversary date of the applicable approved labor agreement."

Id.

Since 1997, NECA and Local 654 have been parties to a consecutive series of

CBA's, the most recent of which covers the period from June 2, 2008, through May 27,

2012. See 2008-2012 CBA, relevant portions of which are attached to Doc. 10 at Exh.

"F."[3]  Each CBA contains a provision regarding changes and termination.[4]  However,

nether the Letter of Assent nor the CBA's defines the method or address for providing

written notice of intent to terminate.

The CBA's between NECA and  Local 654 specifically provide that the parties

shall be bound by the Agreements and Declarations of Trust establishing the Pension and

Health and Welfare Funds ("Trust Agreement").  See  Doc. 10 at Exh. "F," pp. 28-29.

The Trust Agreement sets forth various mechanisms whereby Plaintiffs' trustees may

pursue information necessary to ensure compliance with the Trust Agreement's terms.

For example, Article V, Section 5.9 of the Trust Agreement provides:

> The Trustees are hereby empowered and authorized to adopt by-
> laws and to promulgate any and all necessary rules and
> regulations which they deem necessary or desirable to facilitate
> the proper administration of the Trust Fund, provided the same
> are not inconsistent with the terms of the Trust Agreement.

Trust Agreement, attached to Doc. 10 at Exh. "G," p. 26.  The Trust Agreement further

provides, in part, that "[t]he contributions or payments of the Employer shall be made in

accordance with the [Trust Agreement], and as it may be amended, and in accordance

with the said Pension Plan and any rules or regulations promulgated by the Trustees in

connection therewith," and that "[t]he Trustees may compel and enforce the payment of

---

[3]The parties have attached specific portions of the CBA's to their briefs, and I am
relying on those portions in setting forth the relevant provisions.

[4]The parties' dispute concerns the efficacy of Defendant's attempted termination
under the Letter of Assent.  See Doc. 10 (Mem.) at 10-12; Doc. 11 at 2-3.  Therefore, the
termination provision of the CBA is not at issue.

the contributions in any manner they deem proper." Id. at 14, 15.  In addition, Article V,

Section 5.10(e) of the Trust Agreement provides:

> The Trustees are hereby empowered, in addition to such other
> powers as are set forth herein or conferred by law: To do all acts,
> whether or not expressly authorized herein, which the Trustees
> may deem necessary or proper for the protection of the property
> held hereunder.

Id. at pp. 27-8.

Moreover, the Trust Agreement indicates the manner and type of information

required for purposes of an audit.  Article IV, Section 4.5 provides as follows:

> Each Employer shall furnish to the Trustees upon request
> individual time sheets which shall set forth thereon the names and
> classifications of the employees from whom contributions to the
> Fund have been made, the number of hours for which payment
> has been made for each employee, social security numbers and
> individual time sheets as the Trustees may require in connection
> with the sound and efficient administration of the Fund created
> thereby.

Trust Agreement, attached to Doc. 10 at Exh. "G," p. 18.

Pursuant to their authority as set forth in the Trust Agreement, on or about

November 21, 2005, the Boards of Trustees of  Local 654 adopted a formal payroll audit

policy ("Audit and Refund Policy").  See Audit and Refund Policy, attached to Doc. 10 at

Exh. "J."  The Audit and Refund Policy sets forth the right of Plaintiffs "to audit the

financial records of contributing employers, including but not limited to payroll ledgers,

federal and state tax returns, IRS Forms 941s and such other books and records of the

employer that are necessary in order for the auditor to give an unqualified opinion that the proper contributions have been made." Id. at pp. 1-2.

**B.      Attempted Termination of the Collective Bargaining Relationship**

On May 10, 1999, IVC sent a letter to NECA which stated in full: "Please be advised that [IVC] is hereby withdrawing from [NECA].  Please make the appropriate paperwork adjustments."  See 05/10/99 Letter, attached to Doc. 10 at Exh. "C."  IVC did not address the letter to  Local 654, nor is there any indication that IVC otherwise notified Local 654 of its intent to terminate the collective bargaining relationship.

On September 10, 2004, IVC sent a letter to  Local 654 stating in full: "Please be advised that [IVC] is hereby withdrawing from [ Local 654] and as such will no longer be bound by your labor agreement."  See 09/10/04 Letter, attached to Doc. 10 at Exh. "O."  IVC did not send the September 2004 termination letter to NECA.  IVC addressed the September 2004 letter as follows:

> IBEW Local 654
> 600 Turner Industrial Way
> Aston, PA 19104-3097

See id.  However, according to Plaintiffs, Local 654 ceased operations at that address in March 2002, having relocated to the following address:

> IBEW Local 654
> 3729 Chichester Avenue
> Boothwyn, PA 19106

See Decl. of Stephen McNally ("McNally Decl."), attached to Doc. 10 at Exh. "D,"

¶¶ 2-3.[5]  Local 654 avers that it never received IVC's termination letter dated September

10, 2004.  See id. at ¶5.  IVC counters that the letter was sent "to the address which

Defendant had in its file," and that since the Postal Service did not return the letter, IVC

"had no way of knowing that its letter had not been received."  Doc. 11 at ¶ 8.

### C.  Audit Dispute and Litigation

Defendant IVC concedes that it submitted to periodic audits between 1997 and

2001.  See Doc. 11 at ¶ 14.  However, IVC refused to submit to an audit requested by

Plaintiffs beginning on May 14, 2008.  See Doc. 1 at ¶ 10; 05/14/08 Letter, attached to

Doc. 10 at Exh. "L."  By letter dated October 24, 2008, Plaintiffs, through counsel,

repeated its request that IVC permit an audit of its books and records for the period

January 1, 2006, through the date of the letter, to ensure compliance with the CBA, and

threatened to file suit in the event IVC continued to refuse.  See 10/24/08 Letter, attached

to Doc. 10 at Exh. "M."  By letter response dated October 28, 2008, Mr. Rekos, President

of IVC, stated that IVC had not employed a union worker since 2001.[6]  See 10/28/08

Letter, attached to Doc. 10 at Exh. "N."  In the same letter, Mr. Rekos stated that if Local

654 still wished to audit IVC's books, it could contact IVC's bookkeeper.  Id.  Thereafter,

---

[5]Defendant does not argue that Local 654 was required to provide notice of the
address change, nor does the Letter of Assent or CBA appear to require notice of such a
change.

[6]According to Mr. Rekos, the last time IVC employed a member of Local 654 was
in 2001, when it employed electrician Dave Bonaventure.  See Reko Dep., attached to
Doc. 10 at Exh. "A" at 26.

IVC refused to submit to an audit on the grounds that it had effectively severed its bargaining relationship with Local 654 before 2008, and because it had not hired any union employees since 2001. See Doc. 11 at ¶ 15.

Plaintiffs commenced this action in the Eastern District of Pennsylvania on December 8, 2009, seeking injunctive relief requiring Defendant to submit to an audit, as well as judgment in the amount found to be due and owing after the audit, liquidated damages as provided by the CBA and Section 502 of ERISA, and reasonable fees and costs. See Doc. 1 at ¶ 11.

On June 28, 2010, Plaintiffs filed the present motion for summary judgment, arguing that there are no genuine issues of material fact regarding the applicability of the CBA and Trust Agreement, and that they are therefore entitled to judgment as a matter of law. See Doc. 10. Specifically, Plaintiffs seek an order compelling Defendant to submit to an audit, as well as fees and costs associated with the litigation. See id. at 6 & Proposed Order. On July 15, 2010, Defendant filed a response arguing that the question of whether IVC effectively terminated its collective bargaining with Local 654 constitutes a disputed issue of material fact which precludes summary judgment. The matter is ripe for review.

## II.  STANDARD OF REVIEW

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

y

is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

## III. DISCUSSION

### A. Defendant Did Not Effectively Terminate the CBA

Disposition of Plaintiffs' summary judgment rests primarily on this question: Has Defendant IVC raised a disputed issue of material fact as to whether it effectively terminated its collective bargaining relationship with Local 654? I conclude that it has not.

The relevant termination procedure is set forth in the parties' Letter of Assent, which is the standard form that IBEW uses to cover employers' delegation of bargaining rights.  See Int'l Bhd. of Elec. Workers Local Union No. 380 v. State Elec., 04-2610, 2006 WL 2228863 at *3 (E.D. Pa. Aug. 3, 2006) (Pollak, J.) (citing Local 257, Int'l Bhd. of Elec. Workers v. Grimm, 786 F.2d 342, 344 (8th Cir. 1986)).  As previously noted, the parties' collective bargaining relationship remained in effect "until terminated by the undersigned employer [IVC] giving written notice to the Penn-Del-Jersey Chapter NECA and to the Local Union [Local 654]" within a defined time period.  Letter of Assent, attached to Doc. 10 at Exh. "B."[7]  This renwal language is often referred to as an "evergreen" clause.[8]

Although the Third Ciruit has not addressed the question, federal courts, including courts in this jurisdiction, have consistently held that termination of a contract containing an evergreen clause  requires strict compliance with all of the relevant termination procedures.  See, e.g., Central States, Se. & Sw. Areas Pension Fund v. Garber Trucks Serv. Inc., 870 F.2d 1148, 1156 (7th Cir. 1989) (termination of CBA with evergreen clause requires party to comply with all specifications for termination); Grimm, 786 F.2d at 346 (employer's attempt to terminate participation in CBA ineffective because

_____

[7]The parties do not contest the timeliness of IVC's attempted terminations.

[8]An "evergreen clause" automatically renews a contract, such as a CBA, unless one of the parties withdraws or terminates the contract in the agreed-upon matter.  See State Elec., 2006 WL 2228863 at *3.

employer failed to comply with written notice and timeliness requirements); Residential

Reroofers Local 30-B Health & Welfare Fund v. A & B Metal & Roofing, Inc., 976

F.Supp. 341, 347 (E.D. Pa. 1997) ("Having failed to comply with the explicit

requirements set for in the CBA, Defendant's efforts to terminate the agreement were

ineffective.").

In State Elec., as in the present case, the defendant employer joined NECA and

signed a Letter of Assent to the terms of a CBA with the local chapter of IBEW.  See

2006 WL 2228863 at *2.  Also as in the present case, the Letter of Assent required the

employer to provide written notice of termination to both NECA and the union.  Id. at *3.

After several years, the employer stopped making contributions to the union as required

under the CBA, and subsequently asserted that it had withdrawn from the collective

bargaining relationship by way of a letter sent to the union several months before the

contributions were required.  Id.  Judge Pollak reiterated that effective termination

requires strict compliance with contractual termination procedures, and then held that

defendant's "failure to send written notice of termination to both Local 380 *and* NECA

means that [the] termination of the agreement was ineffective."  Id. (emphasis added).

Here, IVC sent a letter to NECA dated May 10, 1999, which stated in full: "Please

be advised that [IVC] is hereby withdrawing from [NECA].  Please make the appropriate

paperwork adjustments."  See 05/10/99 Letter, attached to Doc. 10 at Exh. "C."  Because

IVC sent the May 1999 letter to NECA and not Local 654, the letter did not comply with

the termination procedures set forth in the Letter of Assent and therefore did not effectively terminate the collective bargaining relationship. See State Elec., 2006 WL 2228863 at *3; A & B Metal & Roofing, 976 F.Supp. at 347. This conclusion is consistent with the fact that, despite its May 1999 letter to NECA, IVC submitted to periodic audits between 1997 and 2001, as a function of its collectively bargained relationship with IBEW Local 654. See Doc. 11 at ¶ 14.

On September 10, 2004, IVC sent a letter to Local 654 stating in full: "Please be advised that [IVC] is hereby withdrawing from [Local 654] and as such will no longer be bound by your labor agreement." See 09/10/04 Letter, attached to Doc. 10 at Exh. "O." Like the May 1999 letter sent to NECA, the September 2004 letter failed to effectively terminate the parties' collective bargaining relationship. First, IVC did not send the September 2004 letter to NECA, even though the Letter of Assent required that notification of termination be sent to both NECA and Local 654. Because IVC addressed the September 2004 to only one of two mandatory recipients, it was ineffective for the same reason as was the May 1999 letter. See State Elec., 2006 WL 2228863 at *3; A & B Metal & Roofing, 976 F.Supp. at 347.

Second, even assuming that termination notice had been effectively communicated to NECA, the September 2004 letter did not provide effective termination notice to Local 654. As previously explained, IVC addressed the September 2004 letter to Local 654 at 600 Turner Industrial Way in Aston, Pennsylvania, at zip code 19014-3097. However,

Local 654 had not used that address since March 2002, when it relocated to 3729

Chichester Avenue in Boothwyn, Pennsylvania, at zip code 19061.  See McNally Decl. at

¶¶ 2-3.  Local 654 avers that it never received IVC's September 2004 letter, see McNally

Decl. at ¶ 4, and IVC has provided no evidence to the contrary.  Instead, IVC states that

the Postal Service did not return the letter to IVC, implying that it may have been

delivered or forwarded to the correct address.  According to IVC, the question of whether

Local 654 received the September 2004 letter creates a genuine of issue of material fact

which precludes summary judgment.  See Doc. 11-1 at 3.

I disagree with Defendant IVC.  It is not disputed that IVC was required to give

written notice to Local 654 nor that IVC mailed notice to an address where Local 654 was

no longer located.  Under the circumstances, I conclude that the fact that the notice was

not returned to IVC undelivered does not give rise to a genuine issue of material fact

regarding the effectiveness of the September 2004 termination letter.  See, e.g.,

Carpenters Local 1471 v. Bar-Con, Inc., 668 F.Supp. 560, 567 (S.D. Miss. 1987)

("[Defendant] has presented no evidence to demonstrate that it gave notice of termination

to the Union at its correct address within the time allowed for termination in either the

CBA or letter of assent.  Absent such evidence, the court is constrained to conclude that

[Defendant] remains bound to the parties' current CBA.").  Even IVC's belief that it had

sent the termination letter to the correct address is insufficient.  See, e.g., Bricklayers

Pension Trust Fund v. QBC, Inc. of Mich., 2006 WL 2244015 at *3 (E.D. Mich. Aug. 4,

2006) (affidavit of employer's president stating that he "believed" termination notice was sent to union via certified mail as required did not create material issue of fact in absence of any evidence of a certified mailing).

IVC also suggests that summary judgment is inappropriate because there is a "legal question whether Plaintiff's receipt of the letter was a requirement for effective termination. . . ." See Doc. 11-1 at 3. Defendant cites no authority for the notion that actual receipt is not required to effectuate termination. While courts in this jurisdiction have not addressed this specific question in the context of ERISA, the default common law rule is that unless the parties contract for different terms, notice is effective only upon receipt, not mailing. See University Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 21 (1st Cir. 1999) ("If the agreement merely provides that one party may terminate by giving notice, the notice will be effective only when received, and not when it is started by mail or otherwise.") (quoting 1A Corbin on Contracts § 265)).[9] Neither party has pointed to any contract language that sets forth the necessary form for providing written notice, nor has IVC cited authority why the common law rule would not apply in

_____

[9]Courts in ERISA cases often rely on general contract principles in the absence of statutory direction. See, e.g., Koenig v. Automatic Data Processing, 156 Fed. Appx. 461, 467 (3d Cir. 2005) (federal common law contract principles guide interpretation of ERISA plans) (citing Bock v. Computer Assoc. Int'l Inc., 257 F.3d 700, 704 (7th Cir. 2001)); Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. & Res. Found., 334 F.3d 365, 381 (3d Cir. 2003) (in construing ERISA claims, courts "apply a federal law of contract, informed both by general principles of contract law and by ERISA's purposes as manifested in its specific provisions") (quoting Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002)).

this context. Therefore, because the parties agreed only to provide notice in writing and not specifically by mail, the default rule applies and notice is effective only upon receipt. Cf. Rapier Invs., 197 F.3d at 21 (notice effective upon mailing, not receipt, where agreement "expressly invites notice 'sent by registered or certified mail'"). As stated, the mere fact that the letter was not returned to IVC undelivered does not raise a genuine issue of material fact regarding Local 654's receipt of the 2004 termination notice.[10]

For all of these reasons, I find that IVC never effectively terminated its collective bargaining relationship with Plaintiffs.

**B.      Plaintiffs Are Entitled to Audit Defendant Pursuant to the CBA**

Having found that IVC did not effectively terminate the parties' collective bargaining relationship, I must determine whether Plaintiffs are therefore entitled to an audit of Defendant. Plaintiffs contend that the Trust Agreement gives its trustees "a wide berth in pursuing the information necessary to ensure compliance with the Trust Agreement's terms." Doc. 10 at ¶ 10. IVC disputes this characterization of the trustees' power generally, and specifically asserts that no such power exists in light of IVC's alleged termination of the bargaining relationship and the fact that IVC has not employed any union workers since 2001. See Doc. 11 at ¶ 10.

---

[10] At best, the fact that the termination notice was not returned undelivered is evidence that it was delivered, presumably to the address to which it was sent. However, because there is no dispute that Local 654 had long vacated the address to which it was sent, the fact that it was not returned undelivered does not constitute evidence that it was received by Local 654.

14

ERISA grants trustees the power to conduct periodic audits for the purpose of determining contribution amounts. See Central States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 569 (1985) (trustees of pension fund permitted to subject employer to random audit because it was "clear that the requested audit is highly relevant to legitimate trustee concerns."). The Supreme Court based its holding in Central States in part on the general policies behind ERISA, which include "assuring the financial integrity of the plans by determining the class of potential benefit claimants and holding employers to the full and prompt fulfillment of their contribution obligations." Id. at 574.

Here, the relevant Trust Agreement gives Plaintiffs' trustees the power to order audits to ensure compliance with the Trust Agreement's terms. For example, the Trust Agreement provides that "[t]he Trustees may compel and enforce the payment of the contributions in any manner they deem proper," and indicates the manner and type of information required for purposes of an audit. See Trust Agreement, attached to Doc. 10 at Exh. "G," at 15, 18. Finally, pursuant to the Trust Agreement's authority to adopt rules and regulations, on or about November 21, 2005, the trustees of Local 654 adopted an Audit and Refund Policy which sets forth the right of Plaintiffs "to audit the financial records of contributing employers, including but not limited to payroll ledgers, federal and state tax returns, IRS Forms 941s and such other books and records of the employer that are necessary in order for the auditor to give an unqualified opinion that the proper

contributions have been made." See Audit and Refund Policy, attached to Doc. 10 at Exh. "J," at 1-2.

Having found that IVC did not effectively terminate its collective bargaining relationship with Local 654, it follows that the relevant CBA and Trust Agreement, as well as the Audit and Refund Policy promulgated thereto, remained in force at all relevant times. Because these documents confer power upon Plaintiffs to order audits to ensure compliance with the Trust Agreement – a power ERISA allows – I conclude that Plaintiffs are entitled to conduct an audit of Defendant IVC, notwithstanding Defendant's assertion that it has not employed any union workers since 2001.

## IV.    CONCLUSION

Viewing the evidence in the light most favorable to the non-moving party, see Anderson, 477 U.S. at 255, I conclude that IVC did not effectively terminate its collective bargaining agreement with Local 654, and that Plaintiffs are therefore entitled to audit IVC pursuant to the terms of the CBA and Trust Agreement. As a result, I will grant Plaintiffs' motion in part and compel Defendant to submit within thirty days of this Memorandum and Order to an audit by an auditor appointed by Plaintiffs. Final judgment will not be entered at this time, however. Instead, Plaintiffs shall have sixty days from the date of this Memorandum and Order in which to move for the amount found due and owing after the audit, if any, as well as fees and costs associated with this litigation, and

Order follows.